**In re JOHNSTON, Logan T., III, Debtor.**

**Logan T. Johnston, III, Plaintiff,**

v.

**Paula Parker, et als., Defendants.**

Bankruptcy No. 01–06221–ECF–SSC.
Adversary No. 01–885.

United States Bankruptcy Court, D. Arizona.

Aug. 8, 2003.

Ronald J. Ellett, Ellett Law Offices, P.C., Logan T. Johnston, Johnston Law Offices PLC, Phoenix, AZ, for debtor.

Craig Bolton, Esq., Jennings, Haug & Cunningham, Larry O. Folks, Poll & Ball, PLC, Michael P. Lane, Adam B. Nach, Lane & Nach, P.C., Phoenix, AZ, Kathryn A. Neuheisel, Neuheisel Law Firm, P.C., Tempe, AZ, for creditors.

Paul A. Randolph, Office of the U.S. Trustee, Phoenix, AZ, for U.S. Trustee.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Chief Judge.

### I. Introduction

Logan T. Johnston III, the Plaintiff in this adversary, and the Debtor–in–Possession, commenced this proceeding against Paula Parker, his ex-spouse, and Melvin Sternberg, her divorce attorney, and another individual on July 23, 2001. After various pretrial matters were considered,[1] the Plaintiff presented his case to the Court over several days. When the Plaintiff rested, the Defendants Parker and Sternberg moved that the Complaint be dismissed because the Plaintiff had failed to show a violation of the stay by the remaining Defendants; or, in the alternative, if the stay violation had been shown, the remaining Defendants did not act willfully, and no damages had been proven by the Plaintiff.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the *Rules of Bankruptcy Procedure.* The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2003).[2]

### II. FACTUAL BACKGROUND

On May 14, 2001, the Debtor filed his Chapter 11 petition for relief with the Court, and, as previously noted, filed this adversary proceeding on July 23, 2001. In the Complaint, the Debtor alleged that the Defendants proceeded with a series of State Court actions in violation of the automatic stay after they were aware that the Debtor had filed his bankruptcy petition.

With the filing of this adversary proceeding, the Debtor simultaneously filed an "Emergency Motion for Ruling That State Court's Minute Entry Violate[d] the Automatic Stay." An expedited hearing on the Emergency Motion was held in this Court on July 31, 2001. At the conclusion of the hearing, this Court vacated the Minute Entry Order of the Maricopa County Superior Court, dated June 26, 2001, but entered on the docket and sent to the Debtor and the Defendants on July 13, 2001. The Debtor's counsel also proceeded with this adversary, because he be-

---

**1.** Early in these proceedings, certain Defendants filed a Motion to Dismiss the Complaint, which was denied, and various Motions for Reconsideration, which were also denied. Because the Defendants appealed the various orders denying their motions, the pretrial matters were not resolved for an extended period of time. Various discovery issues also delayed the start of the trial. The Plaintiff had also included a judge of the Arizona Trial Court (the Maricopa County Superior Court) who had presided over the Plaintiff's and Parker's divorce proceedings as

one of the Defendants. However, as the proceedings progressed in this Court, the Plaintiff determined not to seek any relief against the Judge, since the Minute Entry Order previously entered by the State Court Judge had already been vacated by this Court.

**2.** All references in this Decision are to the Bankruptcy Reform Act of 1978, as amended, and to the *Rules of Bankruptcy Procedure* ("RBP") unless otherwise indicated.

lieved that Defendants Parker and Sternberg had willfully violated the stay and that compensatory and punitive damages should flow from their actions.

However, prior to the hearing in this Court on July 31, 2001, a number of proceedings had occurred in the Maricopa County Superior Court. A brief history of what has transpired between the parties is important in determining whether the automatic stay has been violated and by whom.

The Maricopa County Superior Court entered a Decree of Dissolution of Marriage on January 2, 1996, dissolving the marriage of the Debtor and Defendant Parker. As a part of the Decree, the Debtor was ordered to pay the sum of $366,948.45, as well as $2,000 per month in support obligations. On January 22, 2001, Defendants Parker and Sternberg filed, in the Superior Court, a request that the Debtor be held in contempt regarding the nonpayment of spousal maintenance or support. At all relevant times, Parker was represented in the Superior Court by Defendant Sternberg.

On May 17, 2001, the State Court held a hearing on the request that the Debtor be held in contempt. The parties have presented this Court with a transcript of those proceedings.[3] The Debtor represented himself before the State Court.[4] It was not until, perhaps, ten to fifteen minutes into the hearing that the Debtor advised the State Court Judge that he had just filed a Chapter 11 proceeding a few days earlier on May 14, 2001. Moreover, the Debtor's bankruptcy attorney did not file any notification of the commencement of the bankruptcy proceedings until May 17, the date of the hearing.[5] Defendants Parker and Sternberg and the State Court did not have the benefit of the Notice of Chapter 11 Filing when the May 17 hearing commenced. It is clear from the transcript that the State Court Judge struggled with how and whether to proceed.

After being advised of the positions of the parties, including the Debtor, the State Court Judge concluded that she should proceed with the hearing to determine whether the Debtor was in contempt of Court for failure to comply with the Divorce Decree or a State Court Order, but that there would be no execution on any judgment until the issue of whether the automatic stay applied to the collection of the unpaid support obligations could be clarified in the Bankruptcy Court.[6] At the conclusion of the contempt proceedings, the State Court took the matter under advisement.

The May 17, 2001 Notice filed by the Debtor in the State Court proceedings stated as follows:

> Please take notice that ... [the Debtor] has filed a Chapter 11 Bankruptcy Petition with the U.S. Bankruptcy Court on May 14, 2001. Accordingly, this action is stayed except those portions that relate to § 362(b). [The Debtor] will be proposing a plan under Chapter 11 to cure any arrears on pre-bankruptcy maintenance payments owed to Ms. Parker.[7]

3. Exhibit A.

4. The Debtor is an attorney admitted to practice in Arizona.

5. Exhibit 2. The Notice of Filing Chapter 11 Bankruptcy is also attached as Exhibits B and C to the Debtor's July 23, 2001 Emergency Motion for Ruling That State Court's Minute Entry Violates Automatic Stay, Docket Entry No. 2.

6. Exhibit A at page 29.

7. Exhibit 2.

This very notice may have created confusion. It left open the possibility that the State Court could proceed under one of the exceptions to the automatic stay.

In a Minute Entry dated June 22, 2001, and filed in the State Court on July 13, 2001 ("July 13, 2001 Minute Entry," "Minute Entry" or Minute Entry Order") the State Court found that the Debtor was in violation of the Divorce Decree. Specifically, the Debtor had made no support payments since October, 1998, leaving an arrearage in the amount of $87,525.60. The Minute Entry also stated that the Debtor was in contempt of court and ordered that he pay the full amount, of the then $87,515.60 Judgment, by August 1, 2001. If the Debtor failed to pay the Judgment by that date, he would be "incarcerated in the Maricopa County Jail for an indefinite period of time until the full amount of arrearages was paid in full." [8]

It may not be gainsaid that all parties to the State Court litigation were surprised by the Minute Entry Order. The evidence presented before this Court reflected that the Defendants had expected further proceedings before the Judge would order the Debtor to pay a sum certain or face any consequences. The Debtor, still representing himself in the State Court proceedings, filed a Motion for Stay and Telephonic Hearing in the State Court.[9] However, the State Court Judge did not set a hearing until August 2, 2001, the day *after* he was to pay the amount of $87,525.60 or face incarceration. The Debtor's counsel meanwhile attempted to contact the State Court Judge (on July 16, 2001 by facsimile) and Defendant Sternberg and Defendant Parker's recently retained bankruptcy counsel on July 17, 2001.[10]

Because the Debtor wanted to proceed simultaneously in the State Court and the Bankruptcy Court, the Debtor immediately sought appellate review of the State Court's July 13, 2001 Minute Entry Order. However, the evidence reflects that Defendant Sternberg left town shortly after receipt of the July 13, 2001 Minute Entry Order, and that it was a partner at his firm who filed the responsive brief in the State appellate proceedings. In the State appellate proceedings, Defendant Sternberg's firm presented the position that the State Court had only proceeded within an exception to the automatic stay. This Court has reviewed the cases cited in the appellate brief, some of which will be discussed later in this Decision, and concludes that the brief was appropriately researched and the arguments presented were not frivolous.

By July 23, 2001, the Debtor and his bankruptcy counsel had filed the Complaint in this adversary, and their Emergency Motion to set aside the July 13, 2001 Minute Entry Order. On July 31, 2001, this Court conducted a hearing on the Debtor's Emergency Motion and concluded that the automatic stay had been violated and vacated the July 13, 2001 Minute Entry Order. At approximately the same time, the State Appellate Court issued a stay of the July 13, 2001 Minute Entry, awaiting this Court's determination of the matter. This Court must emphasize that although it vacated the State Court's Minute Entry Order, it left for future proceedings whether the Defendants had willfully violated the automatic stay and whether compensatory and punitive damages would flow from the violation.

8. Exhibit B at page 2.

9. Exhibit C.

10. See the Debtor's Emergency Motion filed with this Court, Docket Entry No. 2.

The parties have subsequently debated at great length what this Court relied on at the July 31, 2001 hearing. Although the July 31 hearing consisted primarily of oral argument, the Debtor's Emergency Motion did contain Schedule I from the Debtor's Schedules, filed under penalty of perjury, and an Affidavit of Defendant Parker dated March 8, 2001, filed in the State Court proceedings.[11] The Debtor did not list his current spouse's income on the Schedule, but the law firm distribution to him was listed at $6,500 per month. The Schedule also reflected that within a year of filing his petition, the Debtor expected his compensation to increase to $16,000 per month.[12] Defendant Parker's Affidavit listed net monthly income of $2,369.82, $85,000 in a money market account, and $1,400,000 in "stocks, bonds, securities."[13]

At the July 31, 2001 hearing, Debtor's counsel argued that the Debtor's Schedules and Statement of Affairs reflected that he had no assets to pay the $87,525.60 obligation by August 1, 2001, that his compensation, the only potential property that he had that was not property of the bankruptcy estate, was clearly insufficient to pay the obligation, and that as a result, the State Court Judge's overly broad Minute Entry Order violated the stay, because it required that property of the estate be utilized to pay the obligation.

If the State Court had qualified its Order to reflect only the amount of the arrearages, or if the State Court had been advised of what constituted non-estate property, so that the Minute Entry Order could be tailored only to the collection of the arrearages from such non-estate property, then the State Court arguably would

have been acting within an exception to the automatic stay. However, the Minute Entry dictated that the Debtor immediately satisfy a large Judgment or face incarceration; all without the State Court focusing on the non-estate property to pay such a Judgment or requesting the Bankruptcy Court's prior determination of whether the automatic stay applied to the property from which the Judgment would have been satisfied.

After the July 13, 2001 Minute Entry Order was entered, Defendants Parker and Sternberg defended their legal position in the State Courts and the Bankruptcy Court. The Plaintiff could provide no evidence that the Defendants attempted to execute on or control any of the Debtor's assets. The Defendants did not file any motion or petition seeking to enforce the Minute Entry Order, but did respond to the pleadings filed by the Debtor in the State and Federal Courts. Although Defendant Sternberg was essentially out of town from July 17 through July 31, 2001, the Debtor and his bankruptcy counsel expected the Defendants or Defendant Sternberg's firm to take affirmative action to vacate the Minute Entry Order. The evidence reflects that the Defendants did not file a pleading, motion, or petition which would constitute such affirmative action.

The Debtor could provide no evidence of any injury or compensatory damages other than the time he expended at his normal hourly rate to file the pleadings in the State and Appellate Court to stay the July 13, 2001 Minute Entry Order.[14]

Although the Debtor has only presented his case, he and Defendants Parker and

11. Docket Entry No. 2, Exhibits E and F thereto.

12. *Id.,* Exhibit E, Schedule I.

13. *Id.,* Exhibit F.

14. The Debtor's testimony was confusing or conflicting at times. The Debtor stated that he drafted various pleadings for the State Court proceedings to obtain a stay which pulled him away from his practice of law. However, he also testified that he typed the

Sternberg testified before the Court as a part of the Debtor/Plaintiff's case. Thus, the Court has had the opportunity to judge the credibility of all of the critical parties. The Court concludes that although Defendant Parker relied on her attorneys as to what action to take in the State or Federal Court, she did not maliciously take action against the Debtor during the course of this litigation.[15] The Court also concludes, based upon the credibility of Defendant Sternberg, that he was initially surprised by the July 13, 2001 Minute Entry Order, that he was subsequently out of town from the time he first learned of the Minute Entry until the July 31, 2001 hearing in the Bankruptcy Court, that based upon the research done at his firm, he believed that he was within an exception to the automatic stay and simply responded to the various pleadings filed by the Debtor, and that he and Defendant Parker took no affirmative action to execute on or control bankruptcy estate or non-estate assets or to collect on the obligation.

The Debtor did establish that he was unable to comply with the July 13, 2001 Minute Entry Order, even if he liquidated estate property.

## III. ISSUES.

The critical issue is whether Defendants Parker and Sternberg violated the automatic stay. A related issue is whether the Defendants were required to take any affirmative action in the State Court litigation to avoid a separate finding of a violation of the stay.

## IV. DISCUSSION.

■ Pursuant to § 362(a), the automatic stay acts as a broad injunction against creditors attempting to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6) (West 2003). The purpose of the automatic stay is to give the debtor a breathing spell from the collection efforts of his or her creditors, prevent a veritable "race to the courthouse," and possibly to aid in an effective reorganization of the Debtor's obligations while providing for an orderly distribution to creditors of the estate. *In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1985).

■■ The broad injunctive relief granted by § 362(a) does have its limits. Particularly germane to the discussion in this case are the various exceptions involving domestic relations actions. The Code exempts from the automatic stay's reach those actions involving the establishment of paternity,[16] commencing or continuing

---

15. It is clear that Defendant Parker has difficulty controlling her emotions when in the presence of the Debtor, such as during the trial of this matter, but there was no credible evidence that she independently took any affirmative action against the Debtor.

16. 11 U.S.C. § 362(b)(2)(A)(i) (West 2003) provides:

The filing of a petition under section 301, 302 or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 does not operate as a stay—

(2) under subsection (a) of this section—

pleadings himself, so it was difficult to discern what time he spent researching and analyzing legal issues and what time he spent on the ministerial task of typing the documents. It was also impossible to determine his skill as a typist. For instance, did he require 10 hours or more just to type the documents? He presented no written evidence which broke out his time on the various matters; such as researching, analyzing, drafting, typing, etc. Moreover, given the wide fluctuation in his monthly gross and net income, it was impossible to determine whether he had lost any business from proceeding in the State Court on his own behalf.

an action to establish alimony, maintenance, or support,[17] and the collection of alimony, maintenance or support from non-estate property.[18] While these are clearly delineated as exceptions to the automatic stay, the Bankruptcy Court, not the State Court where the domestic relations action is pending, remains the final arbiter with regard to questions regarding the scope and applicability of the automatic stay. *In re Gruntz*, 202 F.3d 1074 (9th Cir.2000) ("A state court does not have the power to modify or dissolve the automatic stay . . . if it proceeds without bankruptcy court permission, a state court risks having its final judgment declared void.") *Id.* at 1087.[19]

■ The debtor in *Gruntz* failed to make child support payments as required by the divorce decree between the debtor and his ex-spouse. 202 F.3d 1074, 1077. Although the debtor had filed a Chapter 11 case, the Los Angeles District Attorney filed criminal charges against the debtor

for failure to pay child support and prosecuted the case, ultimately leading to a guilty verdict as to the debtor and a jail sentence for him of 360 days. *Id.* The debtor then filed an adversary proceeding in the bankruptcy court against the County, asking the court to find the County's actions void because of a violation of the automatic stay.[20] *Id.*

The Ninth Circuit, in *Gruntz*, undertook an extensive analysis of the jurisdictional overlap between the state and the federal systems. The Court found that since issues involving the automatic stay were a core proceeding, they were not subject to collateral attack in a state court. 202 F.3d 1074, 1082. Further, with respect to the injunctive nature of the automatic stay, consonant with the authority derived from the bankruptcy court's exclusive jurisdiction over core proceedings,[21] the Ninth Circuit stated:

> [The] bankruptcy court's authority to determine the matter is so not only be-

(A) of the commencement or continuation of an action or proceeding for—
  (i) the establishment of paternity; or

17. 11 U.S.C. § 362(b)(2)(A)(ii) (West 2003) provides:
  (ii) . .the establishment or modification of an order for alimony, maintenance, or support; or

18. 11 U.S.C. § 362(b)(2)(B) (West 2003) provides:
  . . .(B) of the collection of alimony, maintenance, or support from property that is not property of the estate.

19. The view that the State Court lacks subject matter jurisdiction to determine the scope of the stay has not been uniformly accepted. In the 2nd, 5th and 6th Circuits, the State Courts have concurrent jurisdiction with the bankruptcy courts to determine whether the automatic stay, or an exception, applies. *In re Baldwin–United Corporation Litigation (Erti v. Paine Webber Jackson & Curtis)*, 765 F.2d 343, 347 (2nd Cir.1985); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986);

*In re Bona*, 110 B.R. 1012 (Bankr.S.D.N.Y. 1990), aff'd 124 B.R. 11; *Cisneros v. Cost Control Marketing an Sales Management of Virginia, Inc.*, 862 F.Supp. 1531 (W.D.Va. 1994), aff'd 64 F.3d 920, cert. denied 517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777; *Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir.1990).

20. Any action taken in violation of the automatic stay is void, not voidable. *In re Schwartz*, 954 F.2d 569 (9th Cir.1992).

21. Indeed, the Ninth Circuit specifically rejected the notion that the states enjoyed concurrent jurisdiction over core proceedings under 28 U.S.C. § 1334(b). With regard to concurrent jurisdiction, the Court stated:
> [The] purpose of this section is not to create jurisdiction in non-bankruptcy courts, but to allow district courts in which the bankruptcy case is filed to adjudicate bankruptcy related actions in which jurisdiction has been vested in other courts. 202 F.3d 1074, 1083.

cause of the comprehensive jurisdiction vested in the bankruptcy courts, but also because persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order. *Id.* (Internal quotations omitted.)

Thus, the plenary power, granted by Congress, with which the bankruptcy courts exercise jurisdiction necessarily requires the state courts to defer to the federal courts, on issues involving core proceedings, even when the state courts are proceeding within their own jurisdictional limits.[22] *Id.* at 1083. Moreover, as a result of the relationship between federal and state jurisdiction on core bankruptcy proceedings, "the federal courts have the final authority to determine the scope and applicability of the automatic stay." 202 F.3d 1074, 1083. The Ninth Circuit also held, based upon the plenary jurisdictional grants issued by Congress, that the *Rooker–Feldman* doctrine was inapplicable to those core matters over which the federal courts had exclusive jurisdiction. The Court stated that in the case of non-core proceedings, the effect of *Rooker–Feldman,* as well as traditional notions or preclusion such as *res judicata* and collateral estoppel, remained unchanged. 202 F.3d 1074, 1084.

After addressing the jurisdictional issues with regard to the automatic stay, the Ninth Circuit next turned to the application of the particular exception to the automatic stay; namely, § 362(b)(1). Subsection (b)(1) specifically exempts from the

reach of the automatic stay any "commencement or continuation of a criminal action or proceeding against the debtor[.]" *Id.* at 1085; 11 U.S.C. § 362(b)(1) (West 2003). Finding that the clear language of § 362(b)(1) as well as a traditional federal deference to state criminal actions controlled, the Ninth Circuit concluded that the state court could proceed with the criminal prosecution without violating the automatic stay. In doing so, the Court expressly overruled *Hucke v. Oregon,* 992 F.2d 950 (9th Cir.1993), which had held that if the underlying purpose of a state's criminal action was the collection of a debt, § 362(a)(6) applied, and the state could not proceed without violating the automatic stay. *Id.* at 1085.

Thus, it appears that *Gruntz* allows a state court to proceed and enter final judgments or orders, if the state court is within an exception to the automatic stay. Ultimately a party may request that the bankruptcy court review the matter to determine whether the state court has proceeded within an exception.

The Defendants then direct this Court to the Ninth Circuit decision of *Allen v. Allen,* 275 F.3d 1160 (9th Cir.2002) as dispositive of the issue of whether Defendant Parker or Sternberg violated the automatic stay or acted within an exception. In *Allen,* the non-debtor ex-spouse sought to appeal a divorce judgment in order to modify the support order to increase payments to her and increase the amount needed to fund uninsured health expenses. *Id.* at 1163. While the bank-

---

**22.** This statement is puzzling insofar as state courts have traditionally had concurrent jurisdiction, and the ability to determine by final adjudication, certain core issues, such as support or maintenance that may arise in Section 523(a)(5) actions, or whether a particular debt has been listed on the debtor's schedules, or the creditor has had notice of the bank-

ruptcy proceedings, so that a determination under § 523(a)(3) may be made. *See* 11 U.S.C. §§ 523(a)(3); 523(a)(5). *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433, 1434 (9th Cir.1993); *Siragusa v. Siragusa (In re Siragusa),* 27 F.3d 406 (9th Cir.1994); *In re Franklin,* 179 B.R. 913 (Bankr.E.D.Cal.1995).

ruptcy court had denied her request for stay relief, the Ninth Circuit concluded that such action was improvident, holding that to the extent a litigant is seeking the modification of a spousal maintenance award, she may proceed within the confines of the exemption granted through § 362(b)(2)(A)(ii) without an order from the bankruptcy court.[23] *Id.* at 1164.

The Ninth Circuit focused only on the exception in § 362 that discusses continuation of a paternity proceeding or the "establishment or modification" of an order as to alimony, maintenance, or support. This subsection does not focus on the collection or enforcement of any order or judgment. There are critical differences between the *Allen* case and this matter.

The Minute Entry Order in this case required the immediate liquidation of *estate* property. The Debtor presented evidence that he could not pay the sum certain set forth in the Minute Entry Order— even with estate property. However, neither Defendant Parker nor Sternberg requested the Minute Entry Order in the form as generated. As stated previously, this Court concludes that all parties to this proceeding were surprised by the scope of the State Court Minute Entry Order. They had anticipated that further proceedings would be required before the State Court determined what action, if any, should be taken concerning the Debtor's nonpayment of support. Instead, the State Court, on its own, concluded that the Debtor was in contempt, that he must pay $87,525.60 by August 1, 2001, or the Debtor would be incarcerated for an indefinite period of time until he paid the Judgment in full.

Because the Minute Entry Order was overly broad and did not consider how the Debtor would pay the Judgment from non-estate property, it violated the stay. However, Defendant Parker and Sternberg did not execute on, control, or otherwise seek to enforce the Minute Entry Order. They simply defended their positions in the State Court and this Court. Thus, this Court's voiding the Minute Entry Order was appropriate, and it was promptly done. The parties learned of the Minute Entry Order on July 16 and 17, the Debtor filed the Complaint and Emergency Motion in the Bankruptcy Court on July 23, 2001, and this Court vacated the Minute Entry Order on July 31, 2001. Hence, the *Allen* decision does not apply to the facts of this case. The automatic stay was violated by the State Court's issuance of the Minute Entry Order. However, this Court does not see any separate violation of the stay by Defendants Parker and Sternberg once the State Court issued such an Order to the surprise of all parties.

The Defendants also heavily rely on the decision of *In re Bezoza,* 271 B.R. 46 (Bankr.S.D.N.Y.2002) for the proposition that no stay violation has occurred as to this Debtor/Plaintiff and that the Maricopa County Superior Court proceeded properly. As noted, a stay violation did occur, but it was a result of the State Court's actions. As to the *Bezoza* decision, the debtor and his wife were divorced in 1999 in New Jersey, but the debtor failed to pay support and related obligations. The ex-wife domesticated the judgment in New York and commenced proceedings in that state to enforce the Judgment. The evidence was presented to a hearing examiner, appointed by the New York court, who created a detailed record of the debtor's assets, his operations through a professional corporation and other medical entities, his salary, his purchases, his lifestyle, and his transfers to and from third parties, including his girlfriend and father. The

---

**23.** See footnote 17 *supra* for the provisions of this subsection.

hearing examiner concluded that the debtor was an unreliable witness and was not impoverished. This detailed record with findings of fact led to monetary and non-monetary sanctions, including arrest, being imposed against the debtor. *Id.* at 47–50. The state court judge issued an Order accepting the examiner's recommendations and causing the debtor to be incarcerated. On appeal, the debtor was released, but having failed to meet certain conditions of his release, was reincarcerated. While he was incarcerated, the debtor filed his Chapter 11 petition. *Id.* at 50. The bankruptcy judge, in *Bezoza,* only considered the issue of whether the debtor's "continued imprisonment violated the stay."

Hence, this Court notes several distinctions. Certainly if a state court has already acted prepetition to incarcerate an individual for civil contempt, the bankruptcy court's analysis of a continuing violation of the stay may be a more narrow or limited focus than a bankruptcy court which is trying to determine, in the first instance, the nature and scope of a minute entry order which has been filed postpetition. Even so, the *Bezoza* court determined that incarcerating an individual for civil contempt might violate the stay if a creditor were attempting to coerce a debtor, with the civil contempt process, to pay a debt from property of the bankruptcy estate. *Id.* at 51. The judge stated:

> As noted, the stay does not apply to the collection of support from non-estate property. Hence, the use of contempt is similarly permissible in those circumstances. Thus, while the automatic stay prevents a support creditor from using civil contempt to recover the pre-petition support from property of the estate [citations omitted], it does not prohibit the use of any collection remedies, including contempt, to satisfy support from non-estate property.

*Id.* The judge then noted that given the *broad ruling from the State Court,* it was "tempting to infer" that the ex-wife was pursuing property of the estate. *Id.* However, the judge concluded that the debtor had failed to meet his burden of proof that the automatic stay was being violated by his continued incarceration. *Id.* at 51–52. Why such a result? The *Bezoza* court relied on a number of unusual factors in arriving at its determination of no continuing violation of the stay. The judge had a detailed prepetition record from the state court reflecting the debtor's non-estate property assets. For instance, the bankruptcy judge noted the many prepetition transfers by the debtor to third parties and that the debtor's resources from his various medical entities did not constitute property of the estate. *Id.* at 53. The judge determined that the non-estate assets were so substantial that no coercive effect was placed on the debtor to use bankruptcy estate assets to pay a prepetition obligation.

This Court has no such detailed record from the State Court to review as to non-estate property. Moreover, the record before this Court reflects that this Debtor has the current inability to pay the obligation from non-estate or estate property. Thus, this Court must return to its analysis that the State Court in this matter violated the stay. The State Court must determine what non-estate assets are available to pay any such support obligations if it is to avoid a violation or continuing violation of the stay problem. It is also true that the State Court in this matter issued its Minute Entry Order in contravention of its statements on the record at the time of the commencement of the contempt hearing between the Debtor and Defendant Parker and that the Defendants did not attempt to execute, by wage garnishment or otherwise, on estate or non-estate property, control estate property or

otherwise act as to the Minute Entry Order. Thus, although the State Court violated the stay by issuing the Minute Entry Order, the evidence reflects that Defendants Parker and Sternberg did not participate in such a violation of the stay. Ultimately the aforesaid Defendants were as surprised by the Minute Entry Order as the Plaintiff, and this Court's prompt vacatur of the Minute Entry Order ultimately resolved the issue.

The Defendants argue that because they were merely continuing the enforcement of a previous State Court Order concerning maintenance or support that was entered prepetition, they were acting within their rights under § 362(b)(2)(B). Relying on *In re Montana*, 185 B.R. 650 (Bankr. S.D.Fla.1995), the Defendants argue that because the State Court has the inherent authority to enforce its orders, the Defendants did not violate the automatic stay because they merely facilitated such an enforcement action. The Defendants' arguments are misplaced for several reasons. This Court is bound by the Ninth Circuit's ruling in *Gruntz*, which states that as to the applicability and scope of the automatic stay, the bankruptcy court is the final arbiter of whether the automatic stay has been violated, and by *Schwartz*, which states that any action taken in violation of the stay is void. In this case, the State Court's attempt to enforce its Order was contrary to specific provisions of § 362.

As noted, if the State Court had qualified its Order to reflect only the amount of the arrearages, or if the State Court had been advised of what constituted non-estate property, so that the Minute Entry Order could be tailored only to the collection of the arrearages from such non-estate property, then the State Court would have been acting within the § 362(b)(2)(B) exception to the automatic stay. If the Debtor *had then violated that properly*

*entered order*, the State Court could have proceeded with its contempt powers. Therefore, the issue is not simply one of a State Court properly enforcing its orders through its contempt powers, but a far more complex one of a State Court using its contempt powers to enforce immediately its overly broad order which has no limitation as to estate or non-estate property, and the appropriate course of action of a debtor and a Bankruptcy Court under such circumstances.

The Defendants have also stated that the court in *Montana* relied on certain Ninth Circuit authority in reaching its decision which this Court must follow. The only case from the Ninth Circuit which was cited in the *Montana* decision is *In re O'Brien*, 153 B.R. 305 (D.Or.1993). In the *O'Brien* decision, the district court upheld the bankruptcy court decision that a state court could enforce an order, using its contempt power, which order had been entered prepetition. The state court had presided over a prepetition divorce proceeding between the debtor and his spouse. As a part of the property settlement between the two parties, the debtor was required to execute a mortgage, in the amount of $27,000, on the couple's real property. The debtor never executed the mortgage, the state court held a postpetition hearing, and the debtor was found to be in contempt of court for failure to execute the mortgage. Relying on the Ninth Circuit decision of *David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir.1977), the Court held that the automatic stay did not reach contempt proceedings arising out of the enforcement of an Order entered prepetition.

The ruling in *O'Brien* is inapplicable to the facts presented to the Court in this case. The underlying state court order never required the payment of a claim out of estate property. Rather, the contempt ruling was issued only after the debtor

failed to complete the technical act of the execution of a mortgage. The state court never issued an order which required the immediate turnover of estate property to avoid a contempt citation. Further, to the extent the *O'Brien* decision relied on the Ninth Circuit's decision in *Hooker, Ltd.*, the latter decision was decided under the Bankruptcy Act, not the current Code, and arguably was superceded or modified by the *Schwartz* and *Gruntz* decisions. Finally, the court in *Hooker, Ltd.* merely held that a trial court may enforce a prepetition order using its contempt power when there is a "limited continuation of a collateral aspect of litigation" not included in the exceptions to the automatic stay. The execution of a mortgage in *O'Brien* might be considered such a "limited continuation" of a matter not central to the litigation.

The Minute Entry Order herein cannot reasonably be described as collateral to any aspect of the State Court litigation or this case. In fact, the amount owed pursuant to the State Court divorce decree and how it might be paid have developed as central issues in this case. If the State Court had potentially clearly identified non-estate property which could have been used to satisfy the judgment, and the Debtor failed to act, the State Court could then have proceeded with contempt proceedings without violating the automatic stay. However, the Minute Entry Order in this case dictated that the Debtor immediately satisfy a large judgment or face incarceration; all without the State Court focusing on the non-estate property to pay such a Judgment or requesting the Bankruptcy Court's prior determination of whether the automatic stay applied to the property from which the Judgment would have been satisfied. The Ninth Circuit's

holding in *Hooker, Ltd.*, in light of the subsequent rulings in *Schwartz* and *Gruntz*, does not extend the State Court's contempt power to the facts presented to the Court in this case.

The cases of *Montana* and *O'Brien* do not change this Court's prior analysis. They are simply inapplicable for the reasons stated.

■ However, the Debtor has also interposed an argument that even if the State Court issued the Minute Entry Order on its own, Defendants Parker and Sternberg must still be held responsible for a continuing violation of the stay because they took no affirmative action to vacate the Minute Entry Order.

■ As to what affirmative actions, if any, were required by Defendants Parker and Sternberg so as not to violate the stay or be in continuing violation of the stay, this Court has reviewed the *In re Roman* and *In re Eskanos* decisions.[24] These decisions are the most recent analysis of the issue, but certainly not the first. The Bankruptcy Appellate Panel and the Ninth Circuit have previously focused on the actions required of a creditor to vitiate a finding of a stay violation. *In re Del Mission Limited*, 98 F.3d 1147 (9th Cir. 1996) (retention of funds by a creditor which constitute property of the bankruptcy estate is a continuing violation of the stay); *In re Abrams*, 127 B.R. 239 (9th Cir. BAP 1991) (creditor's retention of the debtors' vehicle after notification that the debtors had filed a bankruptcy petition was exercising control over property of the estate and a separate violation of the automatic stay). Thus, retaining property of the estate is a stay violation, and the creditor must take the affirmative action of

---

24. *In re Roman*, 283 B.R. 1 (9th Cir. BAP 2002); *Adler v. Leetien (In re Eskanos)*, 309 F.3d 1210 (9th Cir.2002).

promptly turning over such property to avoid a continuing violation of the stay. However, what if no property of the estate is held by the creditor, and the creditor simply has a pending proceeding before the court?

To a certain extent, both the *Roman* and *Eskanos* decisions may be explained by the fact that the same law firm was representing the creditors in both cases. In each case, the law firm and the creditor were provided with notice of the bankruptcy filing (*Roman,* 283 B.R. at 4; *Eskanos,* 309 F.3d at 1212–1213); and in each, the creditor and the law firm filed *post-petition* collection actions. *Id.* Certainly, having knowledge of the stay, the creditors' and their lawyers' actions of filing and serving the collection complaints violated the stay.

The *Roman* panel, however, also recognized the increasing trend in the case law of the debtors utilizing Section 362(h) as a sword (283 B.R. at 11–12), and accepted the position of the courts that "in determining reasonable damages under § 362(h)," the bankruptcy court must examine whether the debtor could have mitigated the damages. *Id.* at 12. Of special concern to the courts are whether the debtor's only injuries are those incurred in litigating the motion for sanctions and that there are no circumstances warranting punitive damages. *Id.*

The *Roman* panel then interjects two critical points. In determining the reasonableness of damages, the Bankruptcy Court must determine whether the creditor or the debtor created the injury, noting "[t]he creditor has the burden both to establish administrative safeguards to present stay violations and to restore the status quo by undoing them." *Id.* Relying on *In re Pace,*[25] where an attorney for the debtor concealed a malpractice action from the bankruptcy trustee so that the settlement proceeds could be retained by the attorney and the debtor, the Panel stated a creditor's non-communication, even as to dismissal of the action in violation of the stay, may "cause or contribute to the ongoing injury." *Id.* at 12–13.

However, how does one define the *status quo?* Why is post-petition action taken by a creditor's agent (the trustee) to continue orally a trustee's sale to a new date and time simply preserving the *status quo,*[26] but other post-petition action a stay violation? For instance, simply allowing a prepetition action to remain pending should not be a violation of the automatic stay. 11 U.S.C. § 108(c) specifically contemplates such a result, since such prepetition actions will remain pending until the bankruptcy court is able to rule on a motion to vacate the stay.[27] Moreover, a party continuing with criminal proceedings or divorce proceedings should not necessarily

---

**25.** *Havelock v. Taxel (In re Pace),* 67 F.3d 187 (9th Cir.1995).

**26.** *First Nat'l Bank v. Roach (In re Roach),* 660 F.2d 1316, 1319 (9th Cir.1981).

**27.** 11 U.S.C. § 108 (West 2003) provides in pertinent part:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for . . . continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201 or 1301 of this title, as the case may be, with respect to such claim.

be sanctioned. Of course, the party must be sure that it is within one of the exceptions under Section 362(b) or the judgment could be deemed void *ab initio*. *See In re Gruntz*, 202 F.3d 1074 (9th Cir.2000).

■ Refining the analysis as set forth in *Roman*, it appears that *Bezoza* is correct, insofar as a debtor who commences an action or files a motion seeking relief from a stay violation should at least set forth a *prima facie* case that the particular creditor defendant has violated the stay. This Court disagrees with *Roman* to the extent the decision implies that the debtor does not carry such a burden. Moreover, a party waiting for a court to provide instructions on how to proceed once a bankruptcy petition has been filed has merely preserved the status quo. This Court does not see such affirmative action or concealment of assets by the Defendants Parker and Sternberg in this case which would cause this Court to conclude that they violated the stay when it was actually the State Court, on its own and without seeking any further information, that issued its Minute Entry Order.

Does the decision of *Eskanos* change this result? No. As noted, both the creditor and its law firm in *Eskanos* received notice of the debtor's bankruptcy petition filing. Nevertheless, the law firm filed a post-petition collection action. After numerous attempts to contact the creditor's counsel, the debtor's counsel learned that the collection action remained pending. *Id.* at 1212. After approximately thirty days, the creditor's law firm dismissed the collection action. *Id.* However, the Ninth Circuit was reviewing the affirmative duty to discontinue postpetition collection actions. It noted that the statute was unambiguous and that § 362(a)(1)[28] prohibited the continuance of "judicial actions." *Id.* at 1213–1214. "Collection actions" were clearly within the parameters of a judicial action. The Ninth Circuit rejected the law firm's argument that merely filing a collection action postpetition was not "continuing" a judicial action, since no effort was made to "carry forward or persist" with such action. The Ninth Circuit declined to follow this argument, stating:

> Maintenance of an active collection action in state court does nothing if not carry forward or persist against a debtor. A debtor enjoys little satisfaction from a creditor's honest words that it files a collection action in state court but refrains from persisting in the collection action until bankruptcy proceedings sort itself out. Active state filings exist as more than placeholders—to risk a default judgment looms over the debtor throughout. Counsel must be engaged to defend against a default judgment. Additionally, state collection actions are not to be used as leverage in negotiating collection over the debtor's estate already in bankruptcy.

*Id.* at 1214. However, this language should be limited to postpetition collection actions commenced or maintained by a creditor or its law firm. If a party is proceeding with a prepetition action to have support arrearages repaid, such a

---

**28.** § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

party will not, because of separate policy reasons incorporated by Congress in numerous provisions of the Code,[29] be subject to the same rules as to maintenance of such an action postpetition. Defendants Parker and Sternberg, because of separate policy issues to provide for and protect the family were not required to dismiss their State Court action. Importantly, given the State Court's initial ruling that it would consider at a later time how to proceed given the Debtor's bankruptcy petition filing, and later Minute Entry Order which surprised all parties and violated the stay because it was overly broad, the Defendants were entitled to defend this Minute Entry Order without being in violation or continued violation of the stay.

The Ninth Circuit also states in *Eskanos* that

> [a] party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding or risk possible sanctions for willful violations pursuant to § 362(h).

*Id.* at 1214. This language should be considered *dicta*, and related to the specific type of proceeding, a "collection action," commenced by the law firm in *Eskanos*. The *Eskanos* decision should not be used as a predicate requiring a dismissal of proceedings which fall within an exception to the automatic stay. Such a result would be inconsistent with the Ninth Circuit decision of *In re Allen*. Moreover, in the *Eskanos* decision, the Ninth Circuit could have relied simply on the fact that the law firm *commenced* the collection action postpetition as a violation of the stay, requiring the prompt action by the law firm and the creditor to dismiss the action.

Given the facts that Defendants Parker and Sternberg were surprised by the scope of the Minute Entry Order, that they did not seek to enforce said Minute Entry Order by executing upon or taking control of estate or non-estate property, that they only defended the Minute Entry Order as being within an exception to the automatic stay, and that this Court promptly vacated the Minute Entry Order, the Court sees no basis to hold the Defendants Parker and Sternberg in violation or continuing violation of the stay.

This Court wishes to limit its holding to the rather unique facts of this case. Whether the Defendants initiated the action in this Court or simply defended their position herein, they had a right to have this Court determine the nature and scope of their actions, and those of the State Court, without the Defendants being subjected to a separate finding of a violation or continuing violation of the automatic stay. From this Court's standpoint, their actions were more akin to maintaining the status quo.

### Conclusion

Based upon the evidence presented by the Debtor/Plaintiff, this Court concludes that the State Court violated the automatic stay by its entry of the Minute Entry Order which was overly broad and did not properly focus on non-estate property which could pay any judgment as to support arrearages, and that Defendants Parker and Sternberg were able to defend this Minute Entry Order without said defense being a violation or continuing violation of the automatic stay. As a result, the Debtor's complaint should be dismissed. The

---

**29.** For instance, § 507(a)(7), § 523(a)(5), § 523(a)(15), and the exceptions to the automatic stay under § 362(b)(2)(A) or § 362(b)(2)(B) focus on the important policy of protecting and providing for the family.

Court will execute a separate order as the final disposition of this matter.