**In the Matter of Logan T. JOHNSTON, Debtor.**

**Logan T. Johnston III, Appellant,**

v.

**Paula Parker, et al., Appellees.**

**Civ. No. 03–1735–PHX–ROS. Bankruptcy No. 01–06221–SSC. Adversary No. 01–00885–SSC.**

United States District Court, D. Arizona.

Feb. 11, 2005.

267

Ronald Jeffrey Ellett, Ellett Law Offices PC, Phoenix, AZ, for appellant.

Craig J. Bolton, Jennings Haug & Cunningham LLP, Adam Bennett Nach, Lane & Nach PC, Michael W. Carmel, Michael W. Carmel Ltd., Daniel Hunt Bergin, Thomas I. McClory, Office of Attorney General, Civil Division, Phoenix, AZ, for appellees.

## AMENDED ORDER

BROOMFIELD, District Judge.

This Amended Order corrects typographical errors in the Court's previous Order entered on September 30, 2004. Appellant Logan T. Johnston III, a Chapter 11 debtor, filed an adversary proceeding pursuant to 11 U.S.C. § 362(h) against his former wife and her lawyer alleging that they had prosecuted contempt proceedings in state court in willful violation of the Bankruptcy Code's automatic stay. After Johnston presented his case at trial, the Appellees made an oral motion for a directed verdict. The bankruptcy court granted the motion in a written decision, finding no liability on the part of the Appellees as a matter of law. The Court affirms in part, reverses in part, and remands for proceedings consistent with this opinion.[1]

## BACKGROUND

In 1993, Appellant Logan T. Johnston III ("Johnston") filed for divorce from Appellee Paula Parker ("Parker") in Superior Court in Maricopa County. (*See* Divorce Decree, Appellant Johnston's Excerpts of Record ("JER") 13.) Johnston, a lawyer, represented himself in the divorce proceedings. The Superior Court entered its findings of facts and conclusions of law on July 19, 1995. (*Id.*) The court awarded the couple's ownership interest in Johnston's law firm, Johnston Maynard Grant & Parker ("JMGP"), to Johnston and assigned a value of $1.18 million to this community asset. (*Id.*) To equalize its award, the court awarded Parker much of the couple's remaining property and a judgment in the amount of $332,078.00, with interest at 10% per annum. (*Id.*) It also awarded spousal maintenance to Parker in the amount of $4,000.00 per month for 24 months and $2,000.00 per month thereafter. (*Id.*)

On January 22, 2001, Parker and her lawyer, Appellee Melvin Sternberg ("Sternberg") filed a motion in the Superior Court to hold Johnson in contempt for nonpayment of spousal support. (Pet. for Order to Show Cause Re: Contempt, attached as Exh. A. to Def. Sternberg's Mot. to Dismiss, Bankr.Docket Entry ("BDE") 14.) Parker alleged that Johnston had not made any spousal maintenance payments to her since October 1998 and that his arrearage as of January 1, 2001 was $79,422.88. (*Id.*) She asked that "the Court enter an Order that [Johnston] be incarcerated; that his professional law license be suspended; and his drivers' [*sic*] license be revoked or suspended until [Johnston] purges himself of contempt by immediately paying *ALL* sums found to be due and owing to [her]." (*Id.* (emphasis in original); *see also* Joint Pretrial Statement ¶ 34, JER 22.)

On February 20, 2001, Johnston filed a response to Parker's motion for contempt and also moved to modify the Superior

---

1. The Court vacated the hearing scheduled for July 14, 2004, because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. *See* Fed R.App. P. 34(a)(2)(C), *incorporated by* 28 U.S.C. § 158(b)(2).

Court's divorce decree.[2] (Def. Parker's Mot. to Dismiss Compl. at 2, BDE 17.) The parties appeared before Superior Court Judge Karen O'Connor on February 22, 2001 for a fifteen-minute review hearing. (*Id.*) Judge O'Connor set an evidentiary hearing for April 6, 2001. (*Id.*) The parties appeared on that date, but the court ran out of time and continued the hearing to May 17, 2001. (*Id.*)

The Superior Court denied Johnston's motion to modify on May 7, 2001. (Def. Parker's Mot. to Dismiss Compl. at 2, BDE 17.) Shortly thereafter, on May 14, 2001, Johnston filed a Chapter 11 petition with the United States Bankruptcy Court for the District of Arizona. (Chapter 11 Petition, JER 14.) Johnston's schedules showed total liabilities of $960,961.00, total assets of $359,595.00, and a gross annual income of $96,000.00 (*Id.*) Among Johnston's liabilities were $270,000.00 in mortgage loans on a home valued at $300,000.00, $110,185.00 in tax liabilities owed to the IRS, and $428,000.00 owed to Parker pursuant to the divorce decree. (*Id.*) Johnston's assets mainly consisted of his $300,000.00 home, his $25,000.00 partnership interest in his new law firm, a $15,000.00 interest in two timeshares, an $8,000.00 car, and $11,000.00 in household furniture, collectibles, and other items. (*Id.*)

On May 17, 2001, the Superior Court proceeded as scheduled with its hearing on Parker's request that Johnston be held in contempt for nonpayment of spousal maintenance. (*See* May 17, 2001 Hr'g Tr., JER 15.) Earlier in the day, Johnston's bankruptcy attorney, Ronald J. Ellett ("Ellett"), had filed a Notice of Filing of Chapter 11 Bankruptcy in the state court. (*See* Notice of Filing, JER 17.) The Notice stated:

> Please take notice that Petitioner Logan T. Johnston has filed a Chapter 11 Bankruptcy Petition with the U.S. Bankruptcy Court on May 14, 2001. Accordingly, this action is stayed except those portions that relate to § 362(b). Mr. Johnston will be purposing [*sic*] a plan under Chapter 11 to cure any arrears on pre-petition bankruptcy maintenance payments owed to Ms. Parker.

(*Id.*) The bankruptcy court found that neither the state court, Parker, nor Sternberg were aware of the Notice of Chapter 11 Filing when the May 17 hearing began. *Johnston v. Parker (In re Johnston)*, 308 B.R. 469, 472 (Bankr.D.Ariz.2003).

The parties presented the bankruptcy court with a transcript of the May 17 hearing at trial, and the transcript was admitted in evidence by stipulation. (March 26, 2003 Trial Tr. at 48, JER 10.). Johnston acted as his own lawyer at the hearing. The transcript shows that after roughly fifteen minutes of argument on discovery issues, Johnston informed the court that he had recently filed for bankruptcy, stating: "Your Honor, could I bring one thing to the Court's attention now? Simply not to appear to be blindsiding anybody, I filed for personal bankrupt-

---

**2.** Johnston explains his arrearage as follows: "In November 1997, Ms. Parker and Mr. Johnston entered into a stipulation providing that 80% of the distributions of JMGP were to be paid directly to her. [ER 18]. Five years later, and in spite of this stipulation, Mr. Johnston's divorce decree debt to Ms. Parker was still not retired because the State Court's projections of the value of Mr. Johnston's interest in JMGP greatly exceeded the amount actually realized. Indeed, Paula Parker only received $268,339.80 because the JMG & P distributions only totaled $381,663—almost $800,000 less than predicted by Ms. Parker's expert. Thereafter, Ms. Parker has successfully taken the position that even though she had received $268,339.80, *none* of these proceeds counted towards Mr. Johnston's 'spousal maintenance' obligation." (Opening Br. of Appellant at 6 (emphasis in original).)

cy on Monday, and to the extent that that [*sic*] has any effect on what we do here, I would like you to know that now." (May 17, 2001 Hr'g Tr. at 23.)

Appellee Sternberg responded: "Your Honor, we—once more I was handed a copy of his filing of bankruptcy. I am no bankruptcy expert by any means. I don't know if it stays the proceedings or not. I have no idea." (*Id.* at 23.) He continued: "This is a spousal maintenance proceeding, and I know spousal maintenance and attorney's fees in connection with these proceedings, I believe, are not exempt from bankruptcy. Whether or not we need to lift [the] stay or not is another matter." (*Id.* at 23–24.) Johnston responded that he was not a bankruptcy expert either and that "what [his] bankruptcy attorney told [him] was that the effect of the bankruptcy is to stay anything regarding the property settlement . . . ." (*Id.*) "With respect to the spousal maintenance," Johnston said, "we are going to be putting together a Chapter 11 plan that will pay all the arrearages, and it's unclear to me, you know, whether that stays anything that we would be doing today or not." (*Id.*)

Sternberg then suggested going forward with "the action," but limiting it to a determination of the arrears on spousal maintenance and attorney's fees. (*Id.* at 23.) He remarked: "Then, perhaps, we can get another hearing at some future [date] for the remainder of these things." (*Id.* at 24.) Johnston apologized for "not knowing exactly what's going on here" and responded: "I object in the abstract to anything that would contravene the bankruptcy laws, but since I don't know what those are, I can't tell you what I'm objecting to." (*Id.*) He then stated: "I don't think there's much dispute about whether I am in arrears on these matters. There may be some dispute about the numbers. I don't

object to those numbers being established if we can do that today." (*Id.*)

As the bankruptcy court noted, "it is clear from the transcript [of the hearing] that the state court judge struggled with how and whether to proceed." *Johnston*, 308 B.R. at 472. Ultimately, the judge concluded that she should proceed with the hearing to determine whether Johnston was in contempt of court for failure to comply with the divorce decree, but that she would "take up the issue of sanctions at a later time when counsel has researched whether or not this court has jurisdiction to issue sanctions when a bankruptcy proceeding is pending." (May 17, 2001 Hr'g Tr. at 24.) At the conclusion of the hearing, the judge took the motion for contempt under advisement. (*Id.*)

In a minute entry dated June 22, 2001 and filed on July 13, 2001 (the "Minute Entry Order" or "Order"), the Superior Court judge found that Johnston was ordered to pay spousal maintenance in the amount of $2,000.00 per month pursuant to the divorce decree; that he had knowledge of the order; that he had the ability to comply with the order; and that he was in arrears in the amount of $87,525.60 through April 1, 2001. (Minute Entry Order, JER 15; Joint Pretrial Statement ¶ 4, JER 22.) The judge granted judgment in favor of Parker for $87,525.60, found Johnston in contempt, and—though she had indicated that she would not proceed further—ordered Johnston to pay the judgment by August 1, 2001. (Minute Entry Order, JER 15.) Significantly, she ordered that if Johnston failed to pay the judgment by that date, he would be "incarcerated in the Maricopa County Jail for an indefinite period of time until the full amount of arrearages was paid in full." *Id.*

The bankruptcy court found that "all parties to the State Court litigation were

surprised by the Minute Entry Order." *Johnston,* 308 B.R. at 473. It observed that "[t]he evidence ... reflected that the Defendants had expected further proceedings before the Judge would order the Debtor to pay a sum certain or face any consequences." *Id.* On July 16, 2001, Johnston's bankruptcy attorney, Ellett, faxed a letter to the state court seeking to vacate the Order. The letter stated:

> Here is the notice of filing Chpt. 11 bankruptcy. Mr. Johnston is prohibited by federal bankruptcy law from transferring or encumbering any of his property. On the other hand, Judge O'Connor's ruling seems to require Mr. Johnston to immediately liquidate his property or else face immediate incarceration. Therefore, I firmly believe that Judge O'Connor's order is a violation of the automatic stay under 11 U.S.C. § 362. I can only assume that she was unaware that 11 U.S.C. 1 [*sic*] 362 applied to this case. I hope she will immediately withdraw her order. If she does not intend to do so, please let me know by noon on July 17, 2001 so that I can seek relief from Chief Judge Curly.

(Letter from Ellett to O'Connor of 7/16/01, at 1, JER 17.) Appellee Sternberg was copied on the letter. (*Id.*)

Ellett continued his efforts to vacate the Minute Entry Order the next day. On July 17, 2001, he faxed a letter to Sternberg requesting that Sternberg take affirmative action to cure the alleged stay violation:

> The [state court's] Minute Entry reflects that you were the attorney who appeared on May 17, 2004 and sought relief ... The Court's ruling is a stay violation, and clearly so. Moreover, as counsel of record you have also violated the stay, as has your client. Further, under Federal Bankruptcy Law you will

> be deemed to be in continuing violation of the stay if you do not take appropriate remedial measures to cure your violation of the stay. Unless this stay violation is immediately cured, I will be filing a complaint in Judge Curly's Court naming Ms. [Parker] and yourself as two of the defendants. My overwhelming preference is that you and Ms. [Parker] bring yourself into compliance with Federal Bankruptcy Law voluntarily. You will have until July 19, 2001, at 3:00 p.m. to take remedial measures.

(Letter from Ellett to Sternberg of 7/17/01, at 2, JER 17.) On July 19, after Appellees did not take action, Johnston filed a petition for special action in the Arizona Court of Appeals seeking a stay of the state court's Minute Entry Order. (Joint Pretrial Statement ¶ 5, JER 22.) He also filed a motion for stay in the Superior Court. (*Id.*) The Superior Court, however, "did not set a hearing until August 2, 2001, the day *after* Johnston was to pay the amount of $87,525.60 or face incarceration." *Johnston,* 308 B.R. at 473.

The Appellees filed a response to Johnston's petition for special action and requested that the petition be denied, arguing that the automatic stay did not prevent the May 17 hearing from continuing or prevent the state court from entering its Order. (Joint Pretrial Statement ¶ 6.) The Arizona Court of Appeals held an expedited hearing, and, on July 31, 2001, granted a temporary stay of the Superior Court's Order. (Order, JER 21.) By then, Johnston and his bankruptcy counsel had filed the complaint in this adversary proceeding as well as an emergency motion to set aside the Minute Entry Order. *Johnston,* 308 B.R. at 473. On July 31, 2001, the bankruptcy court held an expedited hearing, found the Minute Entry Order in violation of the stay, and vacated the Order. (*See* Minute Entry, ER 5.)

Thereafter, the Appellees filed motions for reconsideration and a motion to dismiss. The bankruptcy court denied the motions. In a written opinion denying Parker and Sternberg's Motion to Dismiss, the bankruptcy court found that the Defendants "violated the automatic stay," but noted that the factual question of willfulness remained. (Memorandum Decision at 6, JER 7.) The matter then proceeded to trial. In the days leading up to the trial and at trial, the bankruptcy court excluded some of the evidence that Johnston sought to introduce on damages, including evidence of Parker's alleged malice, the value of Parker's alleged interest in a real estate trust, Johnston's alleged emotional distress, and evidence bearing on the attorneys fees incurred by Johnston in this adversary proceeding. (*See* February 28, 2003 Hr'g Tr., JER 8; March 28, 2004 Trial Tr., JER 10; April 2, 2003 Trial Tr., JER 11.) After Johnston presented his case at trial, the Appellees moved for a directed verdict. (April 2, 2003 Trial Tr. at 158, JER 11.) The bankruptcy court granted the motion in a written opinion issued August 8, 2003 and reversed its earlier holding that the Appellees violated the stay, stating that "the Court sees no basis to hold the Defendants Parker and Sternberg in violation or continuing violation of the stay." *Johnston,* 308 B.R. at 484.

## CONTENTIONS

Johnston argues that the bankruptcy court erred in holding that the Appellees did not willfully violate the automatic stay. (Opening Br. of Appellant at 9.) He also argues that the court erred by prohibiting him from introducing certain evidence of Parker's alleged malice; prohibiting him from introducing evidence of the value of

Parker's alleged interest in a real estate trust; prohibiting him from introducing evidence of emotional distress; allowing Parker to make "a false and prejudicial speech to the Court;" and preventing him and his counsel from testifying at trial about attorney's fees incurred during the adversary proceeding. (*Id.* at 10.)

## JURISDICTION

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

## DISCUSSION

### I. The Motion to Strike

Appellee Parker has moved to strike portions of the record on appeal. (*See* Mot. to Strike, [Doc. # 2].) The only parts of the Motion that have merit are Parker's objections to documents related to a motion to remand in a different adversary proceeding that were erroneously docketed by the bankruptcy court clerk in this proceeding. Johnston agrees that those documents should be stricken, and the Court will enter an order to that effect.

### II. The Directed Verdict on Liability

#### A. Standard of Review

■ The Appellees moved for a directed verdict at trial, and the bankruptcy court granted the motion. "A directed verdict is more properly applicable to cases tried before a jury, and is essentially comparable to a motion for summary judgment."[3] *Kuan v. Lund (In re Lund),* 202 B.R. 127, 128 (9th Cir. BAP 1996). The Appellees motion was in fact a motion for a judgment based on partial findings, and is governed

---

**3.** Motions for directed verdicts are now called motions for judgment as a matter of law, and

are governed by Rule 50 of the Federal Rules of Civil Procedure.

by Rule 52(c) of the Federal Rules of Civil Procedure. *See id.* Rule 52(c) provides:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Fed.R.Civ.P. 52(c). Rule 7052 of the Federal Rules of Bankruptcy Procedure makes Rule 52(c) applicable in adversary proceedings.

 When ruling on a Rule 52(c) motion, "the court acts as both judge and jury." *Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.),* 216 B.R. 371, 374 (Bankr.S.D.N.Y.1998); *Grant v. Bullock County Bd. of Educ.,* 895 F.Supp. 1506, 1509 (M.D.Ala.1995). The "court is within its prerogative 'to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.'" *Von Zuckerstein v. Argonne Nat'l Lab.,* 984 F.2d 1467, 1475 (7th Cir.1993) (quoting *Sanders v. General Serv. Admin.,* 707 F.2d 969, 971 (7th Cir.1983)); *see also In re Lund,* 202 B.R. at 130 ("On a motion under Fed.R.Civ.P. 52(c), the judge is the trier of fact and may weigh and consider the evidence and sustain defendant's motion though plaintiff's evidence establishes a prima facie case that would have precluded a directed verdict for defendant in a jury case." (quotations omitted)). In reviewing a judgment entered pursuant to Rule 52(c), the lower court's findings of facts are reviewed for clear error and its

legal conclusions are reviewed *de novo. Price v. United States Navy,* 39 F.3d 1011, 1021 (9th Cir.1994).

 Whether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law reviewed *de novo. Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210, 1213 (9th Cir.2002). On the other hand, a bankruptcy court's determination that a stay violation was willful, so as to subject the violator to an award of damages against it, is reviewed for clear error. *Safety National Casualty Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.),* 303 B.R. 299, 303 (D.Del.2003); *Shadduck v. Rodolakis,* 221 B.R. 573, 581 (D.Mass.1997).

## B. The Automatic Stay

Title 11 U.S.C. § 362(a) automatically stays a wide array of collection and enforcement proceedings against the debtor and his or her property. The stay is self-executing and is effective upon the filing of the bankruptcy petition. 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp. (In re The Minoco Group of Companies),* 799 F.2d 517, 520 (9th Cir.1986). It "is an instrument of sweeping breadth and tremendous power." Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code* ¶ 5.03[1] (Matthew Bender ed.2004). The stay "is intended immediately to put the debtor and the debtor's property under the protection of the bankruptcy court" and its availability "is often a significant factor in a debtor's decision to commence a bankruptcy case." *Id.*

 The automatic stay has three basic purposes. First, by stopping collection efforts against the debtor, the stay gives the debtor time to devise a reorganization plan

and " 'to be relieved of the financial pressures that drove him into bankruptcy.' " *Benedor Corp. v. Conejo Enters. (In re Benedor Corp.)*, 96 F.3d 346, 351 (9th Cir. 1996) (quoting S.Rep. No. 95–989, at 54–55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41). Second, it "assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets." *Dean v. Trans World Airlines*, 72 F.3d 754, 755–56 (9th Cir. 1995); *see also* H.R.Rep. No. 95–595, at 340, *reprinted in part* in 1978 U.S.C.C.A.N. 5787, 6297. Finally, it affords the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir.1985).

■ The scope of the automatic stay is set forth in a series of overlapping provisions in § 362(a). The stay bars the commencement or continuation of any judicial, administrative or other action against the debtor that was or could have been commenced before the commencement of the bankruptcy case or to recover a claim against the debtor that arose before the bankruptcy case. 11 U.S.C. 362(a). It "provides for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims." 3 *Collier on Bankruptcy, supra,* ¶ 362.01 (Matthew Bender 15th ed. Revised 2004). "It also stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor or property in the custody of the estate." *Id.*

■ Although the reach of the automatic stay is broad, it is not without limits. Some actions that would otherwise fall within the scope of the stay are excepted.

Among these exceptions is § 362(b)(2), which provides that the stay shall not apply to (A) the "commencement or continuation of an action or proceeding" for "the establishment of paternity" or "the establishment or modification of an order for alimony, maintenance, or support," or (B) "collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2). "When this exception is applicable, seeking relief from the stay is unnecessary, since the stay never comes into effect." Sommer & McGarity, *supra,* ¶ 5.03[3].

■ Section 362(b)(2)(B) is particularly relevant here. That section exempts from the stay collection of alimony, maintenance, or support from property that is "not property of the estate." 11 U.S.C. § 362(b)(2)(B). In Chapter 11 cases, property of the estate is defined by 11 U.S.C. § 541. "[G]enerally it includes virtually all property rights and interests of whatever kind that the debtor had at the time the bankruptcy case commenced." Sommer & McGarity, *supra,* ¶ 5.03[3][a][i] (citing 11 U.S.C. § 541(a)(1)). Property of the estate "does not generally include any property interests or income acquired by the debtor after the commencement of the bankruptcy case, except to the extent that they are rents and proceeds of estate property." *Id.* (citing 11 U.S.C. § 541(a)(5)). Thus, in a Chapter 11 case, "collection of support or alimony solely from the debtor's postpetition income or property is not stayed." *Id.*

### C. Enforcement of the Automatic Stay

■ Enforcement of the automatic stay is accomplished in two ways. First, "[c]ourts have consistently held that legal proceedings in violation of the automatic stay are void, regardless of whether the party initiating or continuing the proceedings has knowledge of the stay." Sommer

& McGarity, *supra,* ¶ 5.05[1]; *see also Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1082 (9th Cir.2000) ("[A]ctions taken in violation of the automatic stay are void."). "Although a very limited exception to this rule may exist for certain postpetition transfers of real estate, in general, any court order or enforcement action pursuant to a legal proceeding that is automatically stayed will be declared a nullity." Sommer & McGarity, *supra,* ¶ 5.05[1](footnote omitted).

■■■■ Second, "parties who violate the stay after notice of the bankruptcy case, and often their counsel as well, have been subject to sanctions including damages, attorney's fees, and punitive damages." *Id.* The automatic stay has the same effect as a court-ordered injunction. *Id.* As a result, "any violation of the stay's provision is contempt of court." *Id.* (citing *In the Matter of Carter,* 16 B.R. 481 (W.D.Mo.1981) and *Fid. Mortgage Inv. v. Camelia Bldrs., Inc.,* 550 F.2d 47 (2d Cir. 1976)). A statutory cause of action arises when a willful violation of the stay occurs and causes injury to an individual. Under 11 U.S.C. § 362(h), an individual injured by any such wilful violation has a right to recover damages, including costs and attorney's fees. *In re Drexel Burnham Lambert Group,* 120 B.R. 724, 738 (Bankr. S.D.N.Y.1990). An additional finding of maliciousness or bad faith warrants the imposition of punitive damages. *Id.* "A 'willful violation' does not require a specific intent to violate the automatic stay." *Pinkstaff v. United States (In re Pinkstaff),* 974 F.2d 113, 115 (9th Cir.1992) (citation omitted). "Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *Id.*

## D. Collection of Alimony, Maintenance, or Support from Property That is Not Property of the Estate

As a threshold matter, this Court must decide whether proceedings to enforce alimony or support orders—like the state court contempt proceedings at issue here—are included in § 362(b)(2)(B)'s exception to the automatic stay, even when those proceedings seek to collect only from non-estate property. Both the bankruptcy court and the parties have assumed that § 362(b)(2)(B) excepts actions to hold the debtor in contempt for failing to comply with a court order so long as the actions seek to collect only from postpetition or exempt property. The issue, however, is not as simple as it appears. Some debate over the breadth of the exception exists.

The editors of *Collier Family Law and the Bankruptcy Code* and *Collier on Bankruptcy* argue that § 362(b)(2)(B)'s exception for the "collection of alimony, maintenance, and support" does not extend to contempt proceedings to enforce such obligations. 3 *Collier on Bankruptcy,* ¶ 362.05[2] (Matthew Bender 15th ed. Revised 2004); Sommer & McGarity, *supra,* 5.03[3][b]. In support of their position, they draw a distinction between the words "enforcement" and "collection." *Id.* They argue that the "collection" as used in the statute means nothing more than the passive receipt of funds pursuant to a prior order or judgment. *Id.* Although they admit that "collection" may be "interpreted to encompass the continuation of a proceeding for the purposes of collecting," they argue that such an interpretation was not likely intended because "other exceptions to the stay specifically speak of enforcement of judgments." Sommer & McGarity, *supra,* 5.03[3][b] (citing 11 U.S.C. 262(b)(5), now repealed).

Second, the editors focus on the absence of the words "enforcement" or "collection"

in § 362(b)(2)(B)'s companion, § 362(b)(2)(A). *See* 3 *Collier on Bankruptcy, supra*, ¶ 362.05[2]. That section grants an exception for the "continuation of an action or proceeding," 11 U.S.C. § 362(b)(2)(A), but only for the "establishment or modification" of an order for alimony, maintenance, or support, *id.* § 362(b)(2)(A)(ii). The editors argue that if Congress had intended to except proceedings to collect alimony, maintenance, or support orders from the automatic stay, it would have included the words "enforcement" or "collection" along with the words "establishment or modification" in § 362(b)(2)(A)(ii). In support of this argument, they cite *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 560, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), *superseded by statute on other grounds*, 11 U.S.C. § 1328(a). In that case, the Supreme Court concluded that when Congress excepted only "the commencement of or continuation of a criminal action or proceeding against the debtor" in 11 U.S.C. § 362(b)(1), it did not mean to also except government efforts to collect criminal restitution debts. *Id.*

While *Collier on Bankruptcy* and *Collier Family Law and Bankruptcy* are persuasive authority for the interpretation of § 362(b)(2)(B), they are not binding. The Court has found no case in the Ninth Circuit that addresses the distinction between the mere passive collection of alimony, maintenance, or support and a proceeding to collect. The vast majority of cases in fact assume that the commencement or continuation of actions or proceedings to collect *are* excepted from the automatic stay, so long as those proceedings seek to collect only from non-estate prop-

erty. *See, e.g., Buyser v. Montgomery County Domestic Relations (In re Buyser)*, No. 99–17642DAS, 1999 WL 458965, at *1 (E.D.Pa. July 2, 1999); *Vargason v. Porter (In re Vargason)*, 260 B.R. 488, 492 (Bankr.D.N.D.2001); *In re Campbell*, 185 B.R. 628, 630 (Bankr.S.D.Fla.1995); *Kearns v. Orr (In re Kearns)*, 168 B.R. 423, 426 (Bankr.D.Kan.1994); *In re Weidenhammer*, 82 B.R. 383, 385–86 (Bankr. E.D.Pa.1988); *Henderson v. Henderson (Ex Parte Henderson)*, 574 So.2d 830, 831 (Ala.Civ.App.1990). The Court has found only one case that adopts the *Collier* position, but that case merely quotes *Collier on Bankruptcy* without discussion. *See Lori v. Lori (In re Lori)*, 241 B.R. 353, 355 (Bankr.M.D.Pa.1999) (quoting 3 *Collier on Bankruptcy, supra*, ¶ 362.05[2] ).[4] The Court will therefore conduct an independent analysis of § 362(b)(2)(B).

▮▮▮▮▮ The *Collier* interpretation of § 362(b)(2)(B) stands or falls on whether the word "collection" in § 363(b)(2)(B) is active or passive and whether any significance attaches to Congress' decision not to use the word "enforcement" in that section or in § 363(b)(2)(A)(ii). As a general rule, "exceptions to the automatic stay are read narrowly to secure the broad grant of relief to the debtor." *Stringer v. Huet*, 847 F.2d 549, 552 (9th Cir.1988). But as always, "[a court's] duty, in matters of statutory construction, is to give effect to the intent of Congress." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1146 (9th Cir.2003). To this end, "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Kaplan v. City of*

---

**4.** Another case, *Tipton v. Adkins (In re Tipton)*, 257 B.R. 865, 875 (Bankr.E.D.Tenn.2000), cites *Lori* for the proposition that § 362(b)(2)(B) does not extend to the continu-

ation or commencement of a proceeding to enforce an alimony order, but includes no substantive discussion of the statute.

*North Las Vegas,* 323 F.3d 1226, 1231–32 (9th Cir.2003) (citation omitted) (second alteration in original). Where, as here, a statute does not define a term, resort to a dictionary is permissible, *United States v. Sherburne,* 249 F.3d 1121, 1126 (9th Cir. 2001), and a court should construe the term in accordance with its "ordinary, contemporary, common meaning," *A–Z, Int'l,* 323 F.3d at 1146 (citation omitted). A court must also, if possible, give effect to every clause and word of a statute. *Negonsott v. Samuels,* 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). Only if an ambiguity exists, or when an absurd construction results, does this court refer to the statute's legislative history. *S.E.C. v. McCarthy,* 322 F.3d 650, 655 (9th Cir. 2003).

Because the analysis of § 362(b)(2)(B) is governed by the traditional rules of statutory construction, the Court begins by looking to the plain meaning of the word "collection." *Webster's Third New International Dictionary* defines the noun "collection" as "the *act* of collecting (as taxes by a tax collector)," specifically "the securing of payment of a check, bond, coupon, or other credit instrument by presentation to the buyer." *Webster's Third New Int'l Dictionary* 444 (Merriam–Webster ed.1986) (emphasis added). To "collect," in turn, means "to *claim* and receive in payment or fair recompense" or "to *present as due* and receive payment for." *Id.* (emphasis added). In contrast to the definition of "collection" adopted by the editors of *Collier on Bankruptcy* and *Collier Family Law and Bankruptcy,* these definitions imply that collection is an active, not merely a passive undertaking. While collection may involve the mere passive receipt of something, this is not the "ordinary, contemporary, common meaning of the word." *A–Z, Int'l,* 323 F.3d at 1146 (citation omitted). The word implies a *claim* for payment followed by receipt of payment.

 The editors of *Collier on Bankruptcy* and *Collier Family Law and Bankruptcy* acknowledge that "collection" may be interpreted to encompass a proceeding to collect, but contend that such an interpretation is unlikely because Congress spoke of "enforcement" of judgments in other exceptions to the stay and could have used that same language in § 362(b)(2)(B). *See* Sommer & McGarity, *supra,* 5.03[3][b]. In making this argument, they are presumably relying on the general rule of statutory construction that teaches that courts should not construe different terms within the same statute to embody the same meaning. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). But that canon "[does not] mean that there cannot be overlap between words in a statute, such that in some cases, both apply." *United States v. Hill,* 79 F.3d 1477, 1482–83 (6th Cir.1996). Given that the primary definition of "collection" is active, the Court finds it unlikely that Congress would choose the less common, passive definition without making its choice explicit. Further, to the extent the editors rely on *Davenport's* discussion of § 362(b)(1) for their argument that "collection" as used in § 362(b)(2) is passive, their reliance is misplaced. In *Davenport,* 495 U.S. at 560, 110 S.Ct. 2126, the Court contrasted § 362(b)(1) with § 362(b)(2) and found that the *absence* of a separate exception for "collection" in § 362(b)(1) indicated that § 362(b)(1) did not exempt efforts to collect criminal restitution debts from the automatic stay. There is no such absence here— § 362(b)(2) contains a specific exception for collection.

 The Court finds that the plain meaning of the term "collection" in § 262(b)(2)(B) encompasses a proceeding

to collect, and that resort to the statute's legislative history is not warranted. The fact that so many cases simply assume that "collection" means a proceeding to collect supports the Court's construction. As the Ninth Circuit has stated, "lack of interpretative caselaw may well mean that other courts and litigants have not doubted the plain meaning of the statute." *Stringer,* 847 F.2d at 551 n. 2. And the assumption about the meaning of the term "collection" is not just one to which bankruptcy courts or district courts adhere. Even the Ninth Circuit has indicated that "collection" includes a proceeding to collect. *See Stringer,* 847 F.2d at 552 ("We find the exemption of § 362(b)(2) for 'collection' of child support applies only to *proceedings to collect* child support that has been awarded by an *order* entered *prior to* the filing of the petition [and not to modification of support order]." (first and second emphasis added; third alteration in original)). Other courts of appeals have made the same assumption. *See Amonte v. Amonte,* 17 Mass.App. 621, 625, 461 N.E.2d 826, 830 (Mass.1984) ("[W]e can only conclude that the word 'collection' in § 362(b)(2) was expressly intended to apply to *proceedings* which have culminated in the entry of final *judgment* or *order* for alimony, or support *prior to* the filing of a petition under the Act." (first, second, and third emphasis added; fourth alteration in original)). So long as contempt proceedings collect only from non-estate property, they are within § 362(b)(2)(B) exception to the automatic stay.

Even if the Court were to rely on § 362(b)(2)'s legislative history, the result would be the same. "The exception in 11 U.S.C. § 362(b)(2) strikes a balance between the goals of protecting the bankruptcy estate and protecting the spouse and children of the debtor." *Carver v. Carver,* 954 F.2d 1573 (11th Cir.1992). The Senate and House Reports state the following about the goals of the § 362(b)(2):

> The automatic stay is one means of protecting the debtor's discharge. Alimony, maintenance, and support obligations are excepted from discharge. Staying collection of [alimony, maintenance, and support], when not to the detriment of other creditors (because the collection effort is against property that is not property of the estate), does not further [the goal of protecting the debtor's discharge]. Moreover, it could lead to hardship on the part of the protected spouse or children.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342–43 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; S.Rep. No. 95–989, 95th Cong., 2d Sess. 51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5837. Significantly, this passage speaks of "collection" in terms of "collection effort[s]." *Id.* This again implies that "collection" as used in § 362(b)(2)(B) encompasses active collection efforts, not merely the passive receipt of funds from a wage attachment or garnishment entered pursuant to a prior order. The plain meaning of the word "collection" in § 362(b)(2)(B) as well as the legislative history of that section support the conclusion that "collection" as used in the statute extends to active proceedings to enforce alimony, maintenance, and support obligations.

**E. Did a Violation of the Stay Occur?**

Having found that § 362(b)(2)(B) does provide an exception to the stay for proceedings to collect alimony, maintenance, or support so long as the collection efforts are made against property that is not property of the estate, the Court now turns to the question of whether a willful stay violation occurred during the state court contempt proceedings, keeping in mind that it reviews findings of fact of the

bankruptcy court for clear error and conclusions of law *de novo*.

### 1. The State Court's Minute Entry Order

■ Appellee Sternberg argues that automatic stay is "simply inapplicable to collection activities related to spousal maintenance" and that the Court "may affirm [the bankruptcy court] solely on the legal basis that the domestic relations state court action was clearly within the § 362(b) statutory exception to the automatic stay[.]" (Appellee Sternberg's Opening Br. at 8–9.) This is simply incorrect. As the discussion in Sections II(B) and (C) above shows, § 362(b)(2)(B) excepts proceedings to collect of alimony, maintenance, or support from the automatic stay, but only when the collection is against property that is not property of the estate. The bankruptcy court found that the evidence demonstrated that Johnston "could not pay the sum certain set forth in the Minute Entry Order—even with estate property." *Johnston*, 308 B.R. at 478. Neither Parker nor Sternberg has challenged this factual finding. Because the state court's Minute Entry Order "required the immediate liquidation of estate property," the bankruptcy court properly held that the Order violated the automatic stay. *Id.*

As the bankruptcy court noted, "[i]f the State Court had qualified its Order to reflect only the amount of arrearages, or if the State Court had been advised of what constituted non-estate property, so that the Minute Entry Order could be tailored only to the collection of the arrearages from non-estate property, then the State Court would have been acting within the § 362(b)(2)(B) exception to the automatic stay." *Johnston*, 308 B.R. at 480. The Minute Entry Order in this case, however, "required that [Johnston] immediately satisfy a large judgment or face incarceration; [*sic*] all without the State Court focusing on the non-estate property to pay such a Judgment or requesting the bankruptcy court's prior determination of whether the automatic stay applied to the property from which the Judgment would have been satisfied." *Id.* Because the Minute Entry Order was overly broad and did not consider whether Johnston could pay the judgment from non-estate property, it violated the stay.

The bankruptcy court in *In re Sutton*, 250 B.R. 771 (Bankr.S.D.Fla.2000) faced a similar situation. The debtor in that case was a party in a divorce proceeding in Dade County, Florida. *Id.* at 774. The defendant, Rodriguez, was appointed guardian ad litem for the parties' minor child, and the state court ultimately entered an order requiring the debtor to pay Rodriguez's reasonable attorney's fees and costs. *Id.* Before the debtor filed for bankruptcy, Rodriquez filed a motion to compel payment. *Id.* Nine days before the hearing on the motion, the debtor filed a Chapter 7 petition. *Id.* Although Rodriguez had knowledge of the bankruptcy case, she proceeded with the hearing. *Id.* The state court judge granted the motion and entered an order compelling the debtor "to make payment of fees to the appointed guardian, Racquel Rodriguez, within 20 days." *Id.* Though Rodriguez argued that the state court was proceeding under § 362(b)(2)(B)'s exception to the automatic stay, the bankruptcy court found that the order violated the stay because it, among other things, "compel[led] the Debtor to pay the fees within 20 days without limiting the source of the payment to monies which are not property of the bankruptcy estate." *Id.* at 775.

■ In the proceedings below, the Appellees relied on *In re Bezoza*, 271 B.R. 46 (Bankr.S.D.N.Y.2002) for the proposition

that the Superior Court proceeded properly. The debtor in that case and his wife were divorced in 1999 in New Jersey, and the debtor failed to pay support and related obligations. *Id.* at 48. The debtor domesticated the judgment in New York, and began proceedings in that state to enforce it. *Id.* Under New York law, a state court may commit a delinquent support debtor to jail upon a finding by the court that the respondent has willfully failed to obey any lawful order of support. *Id.* at 51–52. Willfulness requires proof of the ability to pay and the failure to do so. *Id.* at 52. The state court appointed a hearing examiner, who took evidence of the debtor's assets, his operations through a professional corporation and other entities, his lifestyle, and his transfers to and from third parties, including his father and girlfriend. *Id.* at 48–50. The examiner found that the debtor willfully failed to pay support and made a non-binding recommendation that the debtor serve six months in prison, but also recommended that he be released from custody upon payment of $200,000 and permitted to serve the balance of his sentence on weekends. *Id.* at 51. The state court later accepted the order and turned the debtor over to the custody of the New York City Department of Corrections. *Id.*

On appeal, the debtor was released but failed to meet certain conditions and was reincarcerated. *Id.* at 50–51. While in jail, he filed a Chapter 11 bankruptcy petition and a motion seeking relief from the bankruptcy court based on the premise that his continuing confinement violated the automatic stay. *Id.* at 48. The bankruptcy court noted that given the broad ruling from the state court, it was "tempting to infer" that the ex-wife was pursuing property of the estate. *Id.* at 51. The court, however, concluded that the debtor's continuing confinement did not violate the automatic stay because the hearing examiner's conclusion that the debtor had the ability to pay support was not based on the availability of resources that, after the bankruptcy petition was filed, became property of the estate. *Id.* at 52. But in that case, the bankruptcy court had a detailed prepetition record reflecting the debtor's assets and determined that the non-estate assets were so substantial that no coercive effect was placed on the debtor to use estate assets to pay the judgment. *Id.* at 53. Unlike the court in *In re Bezoza*, the bankruptcy court here had no such record to review from the state court. Moreover, the court found that Johnston could not pay the judgment from *even from estate property*. Given the breadth of the State Court's Minute Entry, the bankruptcy court correctly concluded that the Superior Court's Minute Entry Order violated the stay.

## 2. The Appellees' Actions

### a. Before Entry of the Minute Entry Order

 Finding that the state court's Minute Entry Order violated the automatic stay is necessary but not sufficient to find Parker and Sternberg liable for the stay violation under 11 U.S.C. § 362(h). A statutory cause of action arises under § 362(h) only when a *willful* violation of the automatic stay occurs. 11. U.S.C. § 362(h). The test for determining whether a violation of the automatic stay is willful is: (1) whether the appellees knew of the stay and (2) whether the violation of the stay was intentional. *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir.1989). "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay under § 362." *Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 901 (9th Cir. BAP 1993), *vacated in part on other grounds, In re*

*Pace,* 56 F.3d 1170 (9th Cir.1995). "Intentional" does not mean a specific subjective intent to violate the stay. *Pinkstaff,* 974 F.2d at 115. It is irrelevant whether the party believed in good faith that it had a right to the property at issue. *Bloom,* 875 F.2d at 227; *Pace,* 159 B.R. at 901. "Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act." *Ramirez v. Fuselier (In re Ramirez),* 183 B.R. 583, 589 (9th Cir. BAP 1995) (quotation omitted)

The bankruptcy court found that the state court acted on its own in issuing the Minute Entry Order *Johnston,* 308 B.R. at 478. It concluded that "all parties to [the contempt proceedings] were surprised by the scope of the Order." *Id.* The state court had promised and the parties "had anticipated that further proceedings would be required before the State Court determined what action, if any, should be taken concerning the Debtor's nonpayment of support." *Id.* Instead, the bankruptcy court found, "the State Court, on its own, concluded that the Debtor was in contempt, that he must pay $87,525.60 by August 1, 2001, or the Debtor would be incarcerated for an indefinite period of time." *Id.* Johnston challenges these findings, alleging that Sternberg requested that the state court order Johnston's incarceration at the May 17 hearing even after he learned of Johnston's bankruptcy filing. (Opening Br. of Appellant at 19.)

The Court equates the bankruptcy court's finding that the state court acted on its own with a finding that there was no willful violation of the automatic stay at that point in time by the Appellees. Willfulness is a question of fact reviewed for clear error. *Kaiser Aluminum Corp.,* 303 B.R. at 303; *Shadduck v. Rodolakis,*

221 B.R. at 581. Review under the clearly erroneous standard is significantly deferential, requiring "a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently. *Phoenix Eng'g & Supply, Inc. v. Universal Elec. Co.,* 104 F.3d 1137, 1141 (9th Cir.1997). Thus, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Elliott,* 322 F.3d 710, 714 (9th Cir.2003).

There is sufficient evidence to support the bankruptcy court's conclusion that the state court acted on its own in issuing the Order. The transcript of the May 17 hearing shows that after learning of Johnston's bankruptcy filing at the May 17, 2001 hearing, Sternberg suggested limiting the hearing to a determination of whether Johnston failed to comply with the support order and to a determination of the amount of arrears, reserving any remaining issues for a future date. The state court judge agreed, and concluded that she should proceed with the hearing to determine whether Johnston failed to comply, but that the issue of sanctions would not be taken up until the question of whether the issue the automatic stay applied to the collection of unpaid support obligations could be clarified. Although Sternberg later mentioned incarceration while cross-examining Johnston on his intent to pay maintenance,[5] the remark appears to have

5. Sternberg asked: "Even after receiving [the contempt petition], you have not paid [Parker] one penny; correct? ... And so would it be a fair statement to say that, unless Judge

282

been made in passing and Sternberg later reiterated that "the only issue[s] before the Court are whether [Johnston has] complied with the court order[.]" (Tr. of May 17, 2001 Hr'g at 79.) As the Ninth Circuit has said, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old unrefrigerated dead fish." *Hayes v. Woodford,* 301 F.3d 1054, 1067 n. 8 (9th Cir.2002) That is not the case here.

**b. After the Entry of the Minute Entry Order**

■ Johnston argues that even if the state court issued the Minute Entry Order on its own, Parker and Sternberg must still be held responsible for a willful violation of the automatic stay under § 362(h) because they took no affirmative action to vacate the Order once they were notified by Johnston's counsel that it violated the stay and because they actually opposed Johnston's requests for a stay of the Order in the Arizona Court of Appeals. The Court finds the rationale of the Ninth Circuit's decision in *Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210 (9th Cir.2002) controlling here and concludes that the bankruptcy court erred in finding that the Appellees were "not in continuing violation of the automatic stay." *Johnston,* 308 B.R. at 484.

Before discussing *Eskanos's* holding and its applicability to this case, a brief discussion of the facts of that case is necessary. The debtor in *Eskanos* filed a voluntary Chapter 7 bankruptcy petition on August 18, 2000. *Eskanos,* 309 F.3d at 1213. He notified one of his creditors, First Select, Inc. ("First Select"), of the filing by first class mail on August 23, 2000. *Id.* On

August 28, First Select's legal counsel and collection agent, Eskanos & Adler P.C. ("Eskanos"), filed a collection action on behalf of First Select in California state court. *Id.* The debtor, Leetien, received a summons for this action on September 5, 2000. *Id.* The next day, Leetien's counsel made several attempts to speak by telephone with an attorney at Eskanos, but no lawyer at the firm would speak to him. *Id.* Ultimately, Leetien's counsel managed to leave a message of Leetien's pending bankruptcy with a legal assistant. *Id.* He also notified Eskanos of the bankruptcy by fax and requested that Eskanos dismiss the state action or place it on the state's stay calendar by September 20, 2000. *Id.* Despite this written demand, Eskanos did not take affirmative action to stay or dismiss the collection action until September 29, 2000. *Id.*

The bankruptcy court found that Eskanos willfully violated the automatic stay. *Id.* It concluded that sanctions were appropriate under § 362(h) because Eskanos knew of the bankruptcy filing on September 6, 2000 but did not discontinue the collection action until September 29, 2000. *Id.* In upholding the bankruptcy court's determination, the Ninth Circuit held that the Bankruptcy Code imposes an *affirmative duty* on the part of creditors to "dismiss or stay" postpetition collection actions filed in non-bankruptcy fora against the debtor. *Id.* at 1214 (emphasis added). The Court rested its holding on the plain language of the automatic stay statute, 11 U.S.C. § 362(a). Section 362(a) prohibits "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of [the bankruptcy case],

O'Connor shows you the dwellings in the county jail, that you will never pay her anything short of being incarcerated. Isn't that a

fair statement?" (Tr. of May 17, 2001 Hr'g at 77.)

or to recover a claim against the debtor that arose before the commencement of [the bankruptcy]." *Id.* The Court found that "it contradicts the plain meaning of the statute to suggest that the § 362(a)(1) stay against the continuation of judicial actions does not prohibit the maintenance of an active collection claim or the unjustified delay in the [stay or] dismissal of such." *Id.*

Eskanos argued that § 362(a)(1)'s prohibition against "continuation" should be read narrowly to encompass only conduct that goes beyond maintaining an active claim and that additional efforts in prosecuting the claim should be required. *Id.* The Ninth Circuit rejected these contentions. It found that "[t]he maintenance of an active collection action alone adequately satisfies the statutory prohibition against 'continuation' of judicial actions." *Id.* at 1215. "Active state filings" (*i.e.*, collection actions that are not stayed or dismissed), the Court noted, "exist as more than placeholders—the risk of default judgment looms throughout" and counsel must be engaged to defend against such a judgment *Id.* at 1214. Further, the Court noted that such filings threaten the proper execution of bankruptcy proceedings by exposing the debtor's estate to multiple collection actions, undermining the debtor's ability to reorganize her financial affairs, and jeopardizing creditors as a class with the possibility that one creditor will obtain payment to the detriment of all others. *Id.*

The Ninth Circuit's holding in *Eskanos* is consistent with established precedent in other jurisdictions. Based on the language of § 362(a)(1), many courts have emphasized the obligation of creditors to take affirmative action to terminate or undo any action that violates the automatic stay. *See, e.g., Patton v. Shade*, 263 B.R. 861 (C.D.Ill.2001); *Utah State Credit Un-ion v. Skinner (In re Skinner)*, 90 B.R. 470, 480 (D.Utah 1988); *In re McCall–Pruitt*, 281 B.R. 910, 911–912 (Bankr. E.D.Mich.2002); *In re Briskey*, 258 B.R. 473, 476 (Bankr.M.D.Ala.2001); *Rainwater v. Alabama (In re Rainwater)*, 233 B.R. 126, 156 (Bankr.N.D.Ala.1999); *vacated on other grounds*, 254 B.R. 273 (N.D.Ala. 2000); *Kirk v. Shawmut Bank (In re Kirk)*, 199 B.R. 70, 72 (Bankr.N.D.Ga. 1996); *Connecticut Pizza, Inc. v. Bell Atlantic–Washington, D.C., Inc. (In re Connecticut Pizza, Inc.)*, 193 B.R. 217, 228 (Bankr.D.Md.1996); *James v. Draper (In re James)*, 112 B.R. 687, 700 (Bankr. E.D.Pa.1990), *aff'd in part, vacated in part on other grounds*, 120 B.R. 802 (E.D.Pa. 1990), *judgment rev'd on other grounds*, 940 F.2d 46 (3d Cir.1991); *Clemmons v. United Student Aid Funds, Inc. (Matter of Clemmons)*, 107 B.R. 488, 490 (Bankr. D.Del.1989); *Adams v. Philadelphia Hous. Auth. (In re Adams)*, 94 B.R. 838, 851 (Bankr.E.D.Pa.1989).

■ The responsibility is placed on the creditor and not on the debtor because to place the burden on the debtor to undo the violation " 'would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate.' " *Ledford v. Tiedge (In the Matter of Sams)*, 106 B.R. 485, 490 (Bankr.S.D.Ohio 1989) (quoting *In re Miller*, 22 B.R. 479, 481 (D.Md. 1982)). "One of [the] purposes of [the automatic stay]· is to protect the debtor from having to convince a state court judge that the state court matter should not proceed." *In re Sutton*, 250 B.R. at 774 (citing *In re Weisberg*, 218 B.R. 740, 752 (Bankr. E.D.Pa.1998)). Though "state court judges generally refrain from proceeding once they are made aware of a bankruptcy filing, the burden is on the creditor not to seek relief against a debtor in violation of the stay." *Id.* As the bankruptcy court in *Elder v. City of Thomasville (In re Elder)*,

12 B.R. 491 (Bankr.M.D.Ga.1981) pointed out: "The creditor sets in motion the process. The creditor is very much in the driver's seat and very much controls what is done thereafter if it chooses. If the continuation is to be stayed, it (the creditor) cannot choose to do nothing and pass the buck to the debtor."

In its memorandum decision granting the Appellees' Rule 52(c) motion, the bankruptcy court found that the Appellees had no affirmative obligation to stay or vacate the Minute Entry Order and sought to distinguish *Eskanos* on several grounds. First, the bankruptcy court pointed out that *Eskanos* involved the commencement of a *postpetition* action while this case involves a *prepetition* action. *Johnston*, 308 B.R. at 483. This distinction is not significant. Title 11 U.S.C. § 362(a) specifically stays "the commencement *or continuation* ... of a judicial ... proceeding against the debtor" (emphasis added). The continuation of a judicial action in violation of the stay is as disruptive to a bankruptcy proceeding as the commencement of one. Courts have "overwhelmingly and consistently held" that creditors have an affirmative obligation "to halt or reverse any pending State Court actions or other collection efforts [in violation of § 362(a) ] commenced *prior to* the filing of a bankruptcy petition, including garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgement lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition." *In re McCall–Pruitt*, 281 B.R. 910, 911 (Bankr. E.D.Mich.2002) (emphasis added). The fact that Appellees filed their motion for contempt before Johnston filed his Chapter 11 petition does not change the nature of their obligation. *See Sutton*, 250 B.R. at 774 ("the fact that the state court hearing was scheduled before the bankruptcy petition was filed is irrelevant").

Second, the bankruptcy court sought to distinguish *Eskanos* by stating that the decision should be confined to "a specific type of proceeding, a 'collection action,'" implying that the Appellees' state court action was not a collection action. *In re Johnston*, 308 B.R. at 483. Again, this distinction is unpersuasive. The state court action *was* a collection action. Appellees tacitly admit as much by asserting that they and the state court were proceeding within § 362(b)(2)(B)'s exception for the "*collection* of alimony, maintenance or support from property that is not property of the estate" (emphasis added). The bankruptcy court's apparent conclusion that the state court proceeding was not an attempt to collect runs contrary to the plain language of § 362(a) which includes multiple and broad prohibitions against collection activities. Section 362(a)(6), for instance, provides that a filed petition operates as a stay "of any act to collect, assess, or recover a claim against the debtor that arose before the commencement of this case under this title." Such a narrow view of "collection" activity on the part of the bankruptcy court is inconsistent with the Ninth Circuit's pronouncement that "[t]he scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law." *Eskanos*, 309 F.3d at 1214.

Third, the bankruptcy court suggested that Parker and Sternberg should not be subject to the same rules as the defendant in *Eskanos* because of "separate policy issues to provide and protect for the family[.]" *Johnston*, 308 B.R. at 484. In support of its argument, the bankruptcy court cited § 362(b)(2)'s exceptions to the automatic stay and the fact that alimony and maintenance are nondischargeable

debts under 11 U.S.C. § 523. This argument fails for three reasons. First, exceptions to the automatic stay—even those relating to alimony, support, and maintenance—are construed narrowly to secure the broad grant of relief to the debtor. *Stringer*, 847 F.2d at 552. Section 362 expresses a policy preference in favor of the debtor and "Congress clearly intended the automatic stay to be quite broad." *Id.; see also* H.R. Rep. No. 95–595, 94th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97. Second, according to the bankruptcy court's own analysis, the state court's Minute Entry Order—which the Appellees defended in the Arizona Court of Appeals—went well *beyond* the scope of § 362(b)(2)(B)'s exception and violated the automatic stay. Finally, "dischargeability and relief from the stay are entirely different concepts." *In re Weisberg*, 218 B.R. at 752. "[T]he stay prevents all actions against the debtor from going forward, even those in pursuit of nondischargeable obligations not squarely within the scope of § 362(b)." *Id.* To the extent Appellees pursued debts outside the scope of § 362(b)(2) by defending the Minute Entry Order, they are subject to the same strictures as any other creditor.

Fourth, the bankruptcy court placed significant emphasis on the fact that the Appellees "took no affirmative action to execute on or control bankruptcy estate or non-estate assets to collect on the obligation." *Johnston*, 308 B.R. at 484. The Ninth Circuit rejected a similar argument in *Eskanos*. In that case, the defendant argued that it had no duty to dismiss or stay its state court collection action (which violated the automatic stay) because § 362(a)'s prohibition against "continuation" should be construed narrowly to encompass only conduct that goes beyond maintaining an active claim. *Eskanos*, 309 F.3d at 1214. The Ninth Circuit disa-

greed, finding that maintenance of an active claim by itself violates the automatic stay and triggers the duty to cure. *Id.* Here, the Appellees did more than just "maintain" the overly broad Minute Entry Order—they actively defended it in the Arizona Court of Appeals. The Superior Court's Minute Entry Order required Johnston to pay $87,526.60 by August 1, 2001, on pain of incarceration. The fact that the Appellees "did not seek to enforce [the] Minute Entry Order by executing upon or taking control of estate or non-estate property," *Johnston*, 308 B.R. at 484, is of no consequence.

Fifth, the bankruptcy court pointed out that the Appellees' brief in the Arizona Court of Appeals "was appropriately researched and the arguments presented were not frivolous." *In re Johnston*, 308 B.R. at 473. As mentioned above, a willful violation of the automatic stay does not require a specific subjective intent to violate the stay. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir.2003). Rather, the creditor need only know of the bankruptcy filing and act intentionally rather than inadvertently. Good faith is not a defense. *Ramirez*, 183 B.R. at 589. In *Pinkstaff*, 974 F.2d at 115, the Internal Revenue Service ("IRS") argued that its actions were based on a good faith belief that it was entitled to repayment and thus were not a violation of the automatic stay. The Ninth Circuit expressly rejected the IRS's contention and found a willful stay violation, stating: "Whether a party believes in good faith that it had a right to [collect] is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Id.* at 114. The Appellees were proceeding at their own risk in the Arizona Court of Appeals and their good faith belief that the Minute Entry Order was within an exception to the stay is irrelevant—"a creditor takes a calculated

risk when it undertakes to make its own determination of what the stay means and fails to obtain clarification from the bankruptcy court to determine whether its actions will violate the automatic stay." *Rainwater*, 233 B.R. at 156 *vacated on other grounds*, 254 B.R. 273 (citing, *inter alia*, *In re Gray*, 97 B.R. 930, 936 (Bankr. N.D.Ill.1989)).

Finally, the bankruptcy court concluded that applying *Eskanos* to creditors continuing prepetition actions in violation of the automatic stay would require creditors to dismiss those actions and that such a result could not have been intended because 11 U.S.C. § 108(c) contemplates that prepetition actions will remain pending until the bankruptcy court is able to rule on a motion to vacate the stay. The court has misread *Eskanos*. *Eskanos* does not require dismissal of actions in violation of the stay, but rather discontinuation. It defines discontinuation as either a dismissal *or* stay of proceedings. *Eskanos*, at 1214 ("A party violating the automatic stay, though continuing a collection action in a non-bankruptcy forum, must automatically *dismiss or stay* such proceeding or risk possible sanctions for willful violations pursuant to § 362(h)" (emphasis added)). In this case, the Appellees were required to take affirmative action to stay or vacate the state court's overbroad Minute Entry Order. Johnston's bankruptcy counsel notified Sternberg of the stay violation on July 17, 2001, yet Appellees took no action to vacate the order and in fact opposed Johnston's request to stay the Order in the Arizona Court of Appeals.[6] The Appellees

had an obligation to remedy the violation and their failure to do so exposes them to sanctions for a willful violation under § 362(h). The bankruptcy court's decision is reversed on this point.

**F. Remand**

 If a judgment on partial findings is reversed on appeal, the matter ordinarily will be returned to the trial court for further proceedings. 9 *Moore's Federal Practice*, § 52.53 (Matthew Bender 3d ed.2003). In this case, remand is necessary because the Appellees' have not yet presented their defense and, at least on appeal, have argued that Johnston is barred by waiver and judicial estoppel from invoking the benefits of the automatic stay. The bankruptcy court has made no findings on the legal or factual merits of these defenses, and the Court leaves the issues of waiver and estoppel to the bankruptcy court assuming that the Appellees have properly raised those defenses below. Further, should the bankruptcy court find that no defenses are applicable, then the issue of damages must also be resolved below.

 On remand, the trial court "may hear any evidence that was not heard before the judgment on partial findings was entered." 9 *Moore's Federal Practice, supra*, § 52.53. "[I]t is not necessary to repeat the evidence that was heard before the judgment, although the party against whom the judgment was entered may supplement the evidence already supplied with any evidence that would have been admissible at the first trial." *Id.*

---

**6.** To the extent that the bankruptcy court relied on its finding that Sternberg was out of town from the time he learned of the July 13, 2001 Minute Entry Order until the July 31 hearing in the bankruptcy court, that finding is clearly erroneous. Sternberg admitted that he was in town and working on the state court case on July 19, 2001 (.5 hours), July

20, 2001 (1.5 hours), and again on July 23, 2001 (2 hours). (March 26, 2003 Trial Tr. at 55–57.) Sternberg also testified that by July 20, 2001, he had received Johnston's request for a stay of the Minute Entry Order that had been filed in the Arizona Court of Appeals. (*Id.* at 55.)

That is, "the trial court may proceed with the case as if judgment had not been entered." *Id.*

## II. The Evidentiary Rulings

In addition to challenging the bankruptcy court's finding of nonliability, Appellant has also challenged a number of evidentiary rulings that the bankruptcy court made concerning damages. These rulings are not yet ripe for review. To reverse on the basis of an evidentiary ruling—as Johnston urges the Court to do—the Court must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial. *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir.2003). Prejudice means that, more probable than not, the lower court's error tainted the verdict or decision. *Id.* In this case, the Appellees have not yet presented their defenses, and there has been no verdict or decision on damages. Although the bankruptcy court made a few offhanded comments concerning damages, the court granted the Appellees' motion for a directed verdict solely on the basis of liability. Without findings of fact or conclusions of law on the Appellees' defenses or on Johnston's damages, the Court cannot properly review the challenged evidentiary rulings. The Court wishes to make clear that it is not resolving or expressing an opinion on the evidentiary issues raised by Johnston on appeal, but assumes that the bankruptcy court will allow Johnston to re-offer his evidence on damages and will rule on the admissibility of the evidence anew should it eventually reach the issue of damages.

Accordingly,

**IT IS ORDERED THAT** Appellee Paula Parker's Motion to Strike [Doc. # 2–1] is **GRANTED IN PART** and **DENIED IN PART**. Bankruptcy Docket Entry numbers 126, 127, and 128 are hereby stricken from the record on appeal. Parker's remaining requests to strike are denied.

**IT IS FURTHER ORDERED** the decision of the bankruptcy court is **AFFIRMED IN PART** and **REVERSED IN PART**. This action is remanded to the bankruptcy court for proceedings consistent with this opinion.